# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHARLIE A. FENNELL, Jr.,

      *Plaintiff*,

      v.

AARP,

      *Defendant*.

Civil Action No. 09-01976 (CKK)

## MEMORANDUM OPINION
(March 16, 2011)

Plaintiff Charlie A. Fennell, Jr. ("Fennell"), a fifty-three-year-old black male, commenced this action *pro se* against his former employer, AARP,[1] alleging violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, in connection with the termination of his employment from AARP.  Presently before the Court is AARP's [5] Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted ("Motion to Dismiss"), which Fennell has opposed.  Based upon the parties' submissions, the relevant authorities, and the record as a whole, the Court shall DENY AARP's Motion to Dismiss in its entirety.

## I.  BACKGROUND

When presented with a motion to dismiss for failure to state a claim, the district court must accept as true the well-pleaded factual allegations contained in the complaint.  *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 2064 (2010).  Furthermore, where the non-movant is proceeding *pro se* and has filed multiple

---

[1]  The organization was once known as the American Association of Retired Persons, but now goes simply by the acronym AARP.

submissions in opposition to the motion to dismiss, the district court should endeavor to read the party's filings together and as a whole. *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). Therefore, in setting forth the factual background relevant to the present motion, the Court shall rely upon all the well-pleaded factual allegations set forth in Fennell's pleadings and memoranda. *See* Compl. for Declaratory Relief ("Compl."), Docket No. [1]; Pl.'s Mem. to Oppose Def.'s Mot. to Dismiss Case ("Pl.'s Opp'n"), Docket No. [10].

Fennell, self-identifying as a "53 year old adult black male," had a long tenure with AARP, a total of nearly twenty-two years. Compl. ¶¶ 1-2, 4. He began his career in July 1987 as a Pre-Press Operator; by the time of his termination—in March 2009—he had risen through the ranks to become Manager, Print Services, a position he occupied for ten years. *Id.* ¶ 5. Fennell's job performance throughout his employment was "impeccable," and he was repeatedly praised in his performance evaluations for "using AARP resources wisely." Pl.'s Opp'n at 3.

In his capacity as Manager, Print Services, Fennell reported to Patricia Peterson ("Peterson"), Director of Operations. Compl. ¶ 5. Peterson, like her predecessors, directed Fennell to accept personal print requests from AARP employees. *Id.* ¶ 6. Indeed, Peterson expressly informed Fennell that he had the authority to approve personal print jobs requiring up to one thousand copies, though he would require her approval or the approval of another superior before commencing a print job exceeding that threshold. *Id.* Peterson's statement in this regard was consistent with AARP's long-standing, unwritten policy governing personal print services. *Id.* Fennell's superiors were aware of that policy and frequently asked him to complete personal print jobs on their behalf. *Id.* It was, in short, "standard practice." Pl.'s Opp'n at 2.

2

Sometime in 2007, Fennell was asked to meet with Gary Weisharr ("Weisharr"), Senior Audit Manager, who was conducting an inquiry into the use of print services for personal purposes. Compl. ¶ 7. During the course of that meeting, Fennell informed Weisharr that he had the authority to approve personal print requests for up to one thousand copies. *Id.* While not entirely clear from the face of the Complaint, it appears that nothing immediately came of the meeting or the inquiry. *Id.*

Sometime in 2009, the issue resurfaced when AARP commenced a more robust internal investigation into the use of print services for personal purposes. Compl. ¶ 8. On or about March 5, 2009, Fennell was again asked to meet with Weisharr, who this time was joined by Caroline Ashe-Donnem ("Ashe-Donnem"), Senior Internal Auditor. *Id.* At some point during the meeting, Fennell was told that he would have to reimburse AARP in the amount of $15,000 for copies that he was accused of making for personal purposes. *Id.* While Fennell admits he made copies for personal use, he maintains that the number was not significant, less than two hundred copies.[2] *Id.* He claims that Weisharr provided no evidence supporting the claimed amount, and the cited $15,000 figure was arbitrary and unsupported. Pl.'s Opp'n at 7. Nevertheless, Fennell ultimately signed an agreement (the "Restitution Agreement") and an accompanying statement requiring him to reimburse AARP in the amount of $5,000. Compl. ¶ 8. He claims he signed only under duress, believing that his employment would be terminated in the event he did not sign. *Id.* Fennell also alleges that AARP represented that executing the

---

[2] Elsewhere, Fennell appears to suggest that the cited figure refers not to the total number of copies that he made, but rather the size of each individual project. Specifically, Fennell suggests that "he only printed personal jobs that were usually 50 to 250 impressions." Pl.'s Opp'n at 7. In any event, Fennell consistently maintains that the total cost of the copies he made was significantly less than the $15,000 identified by AARP. Compl. ¶ 8; Pl.'s Opp'n at 7.

Restitution Agreement would resolve all its concerns about his behavior, that the representation was false and known to be false at the time it was made, and that he relied on the representation in signing the agreement. *Id.*

Apart from Fennell, no employee was ever required to reimburse AARP for the use of print services for personal purposes. Compl. ¶ 8. Fennell contends that "[n]o white employee working for [AARP] has been treated in the same manner." Pl.'s Opp'n at 5. Specifically, he names three AARP employees—two white males and one white female—who used print services for personal purposes but were neither terminated nor asked to provide restitution for such services. *Id.* at 2-3.

On March 10, 2009, five days after his meeting with Weisharr and Ashe-Donnem, Fennell was informed by Peterson and Annette Nelson ("Nelson"), Human Resources Representative, that his employment would be terminated effective March 20, 2009 as part of a reduction-in-force prompted by deteriorating economic conditions. Compl. ¶ 9. During his meeting with Peterson and Nelson, Fennell was promised that he would be given a severance package in one of three forms of his choosing (the "Severance Agreement"). *Id.* Fennell was provided written documentation pertaining to the termination of his employment and AARP's separation program, Pl.'s Opp'n at 8, instructed to return his severance election form by a specified date, and directed to leave the premises immediately, Compl. ¶ 9.

On March 18, 2009, eight days after his meeting with Peterson and Nelson and two days before the termination of his employment was to become effective, Fennell received a phone call from Peterson and Remus Boxley ("Boxley"), Human Resources Representative. Compl. ¶ 9. During that phone call, Fennell was informed that he would be terminated not as part of a

reduction-in-force, but instead for using print services for personal purposes.  *Id.*  He was further

told that, in light of the change in the reason for his termination, he would not be eligible for

severance.  *Id.*  While not entirely clear from the face of the Complaint, Fennell appears to allege

that his employment was terminated effective immediately.  *Id.*  Based upon Peterson and

Boxley's indications that AARP would not honor its promise to provide him with severance,

Fennell never returned his severance election form.  Pl.'s Opp'n at 2.

At the time of his termination, Fennell had more seniority and experience than all the

managers who remained employed in his department, and he claims to have been qualified for

the positions that were not eliminated.  Pl.'s Opp'n at 8.  Moreover, less than two months after

his termination, Fennell's former position was assumed by Peggy White, a black female that

Fennell supervised and trained for more than twelve years.  *Id.*

Fennell commenced this action against AARP on October 20, 2009.  *See* Compl.  Self-

identifying as a "53 year old adult black male," he expressly frames his causes of action as

arising under Title VII.  *Id.* ¶¶ 1-2.  Specifically, he contends that AARP's reliance upon his use

of print services for personal purposes as a basis for his termination is pretextual.  *Id.* ¶ 11.

While he admits that he made copies for personal use, *id.* ¶ 8, Fennell nevertheless contends that

the "reason [for his termination] has no basis in fact because of the unlawful discrimination by

[AARP]," Pl.'s Opp'n at 3.  However, somewhat contradictorily, Fennell sometimes appears to

contend that AARP's stated reason for his termination was not a pretext for discrimination, but

rather for denying him the severance he was otherwise promised.  Compl. ¶ 11.  Regardless, he

seeks compensatory damages in the amount of $1,000,000, punitive damages in the amount of

$3,000,000, specific enforcement of the Severance Agreement, and rescission of the Restitution Agreement. *Id.* ¶¶ 12-13.

On December 8, 2009, AARP filed the present [5] Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As grounds for dismissal, AARP argues that Fennell fails to allege that he exhausted his administrative remedies and fails to state a plausible claim for relief under Title VII. *See generally* Mem. in Supp. of Def.'s Mot. to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted ("Def.'s Mem."), Docket No. [5]. Fennell moved for an extension of time "to conduct additional and necessary legal fact finding and research," Pl.'s Consent Mot. for Extension of Time to Respond to Def.'s Mot. to Dismiss, Docket No. [8], and the motion was granted, Order (Jan. 6, 2010), Docket No. [9]. During the time period in between the filing of AARP's Motion to Dismiss and the deadline for Fennell's opposition, Fennell filed a charge of discrimination, dated December 23, 2009, with the Equal Employment Opportunity Commission (the "EEOC").[3] Pl.'s Opp'n at 8, 12. Therein, he asserts that he was discriminated against by AARP on three bases—race, sex, and age. *Id.* at 12. Specifically, Fennell's charge of discrimination provides:

> I believe that I have been discriminated against based on my race
> (Black) and sex (male), in violation of Title VII of the Civil Rights
> Act of 1964, as amended. I also believe that I have been

---

[3] The charge of discrimination and the EEOC's right-to-sue letter are attached to Fennell's opposition papers and incorporated therein by reference. Pl.'s Opp'n at 8, 11-12. Consideration of these documents is proper because, when presented with a motion to dismiss, a court may consider "any documents attached to [the non-movant's pleadings] or incorporated by reference." *Felder v. Johanns*, 595 F. Supp. 2d 46, 58-59 (D.D.C. 2009) (citing *Equal Empl. Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). Furthermore, "a court may consider an EEOC complaint and Notice of Charge without converting a motion to dismiss into a motion for summary judgment because such records are public document[s] of which a court may take judicial notice." *Ndondji v. InterPark Inc.*, __ F. Supp. 2d __, 2011 WL 810701, at *4 (D.D.C. Mar. 9, 2011) (internal quotation marks omitted).

> discriminated against based on my age (53), in violation of the Age
> Discrimination in Employment Act of 1967, as amended.

Pl.'s Opp'n at 12.  On or about January 22, 2010, a mere thirty days after Fennell first filed his

charge of discrimination, the EEOC issued a right-to-sue letter, providing that the EEOC was

closing its file on Fennell's charge of discrimination:

> The EEOC issues the following determination: Based upon its
> investigation, the EEOC is unable to conclude that the information
> obtained establishes violations of the statutes.  This does not certify
> that the respondent is in compliance with the statutes.  No finding is
> made as to any other issues that might be construed as having been
> raised by this charge.

Pl.'s Opp'n at 11.

On February 17, 2010, Fennell filed his opposition to AARP's Motion to Dismiss.  *See*

Pl.'s Opp'n.  On March 1, 2010, AARP filed its reply.  *See* Reply Br. in Supp. of Def.'s Mot. to

Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted ("Def.'s Reply"),

Docket No. [11].  While AARP continued to submit materials in support of the present motion, a

matter discussed in greater detail below, the matter was then fully briefed and ripe for

adjudication.

## II.  LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. (8)(a), "in

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

U.S. 41, 47 (1957)).  Rule 12(b)(6) provides a vehicle for parties to challenge the sufficiency of a

complaint on the ground that it "fail[s] to state a claim upon which relief can be granted."  Fed.

R. Civ. P. 12(b)(6). When presented with a motion to dismiss for failure to state a claim, the district court must accept as true the well-pleaded factual allegations contained in the complaint. *Atherton*, 567 F.3d at 681. Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Id.* at 1950. When a complaint's well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.*

While "[a]ll pleadings shall be so construed as to do substantial justice," Fed. R. Civ. P. 8(f), a document filed by a party proceeding *pro se* must be "liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted). For example, where a *pro se* party has filed multiple submissions, the district court must generally consider those filings together and as a whole. *Richardson*, 193 F.3d at 548; *see also Sieverding v. U.S. Dep't of Justice*, 693 F. Supp. 2d 93, 101 n.2 (D.D.C. 2010) (considering factual allegations in

*pro se* plaintiff's prior pleadings even though they had technically been superceded by filing of amended complaint). Moreover, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks omitted). Nonetheless, "[a] pro se complaint, like any other, must present a claim upon which relief can be granted." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981). Even with the liberality afforded *pro se* complaints, the district court "need not accept inferences unsupported by the facts alleged in the complaint or legal conclusions cast in the form of factual allegations." *Kaemmerling v. Lappin*, 663 F.3d 669, 667 (D.C. Cir. 2008) (internal quotation marks omitted).

### III. DISCUSSION

The Court's discussion proceeds in three parts. First, beginning with the issues that have been the focus of the parties in briefing the present motion, the Court shall explain why Fennell has stated a claim for race- and sex-based discrimination. Second, although afforded little attention in AARP's moving papers, the Court shall explain why Fennell has also stated a claim for age-based discrimination. Third, because the Court can glean from Fennell's *pro se* filings the contours of several other claims left altogether unaddressed by AARP, the Court will endeavor to identify the claims that may require further attention from the parties as this action develops further.

### A. Fennell Has Stated a Claim for Race- and Sex-Based Discrimination

In support of the present motion, AARP's arguments for dismissal are two-fold: AARP first argues that Fennell has failed to allege that he exhausted his administrative remedies; it next argues, more forcefully, that Fennell has failed to state a plausible claim for discrimination. The

Court addresses each argument in turn.

### 1. AARP Has Failed to Establish that Fennell Did Not Exhaust His Administrative Remedies

Before commencing an action based on Title VII in federal court, a plaintiff must first file a timely charge of discrimination with the EEOC. *Lewis v. City of Chicago, Ill.*, __ U.S. __, 130 S. Ct. 2191, 2196-97 (2010). The exhaustion requirement serves the salutary purposes of providing the EEOC the opportunity to investigate the claimant's allegations, affording the charged party notice of those allegations, and potentially narrowing the issues requiring further adjudication. *Ndondji*, 2011 WL 810701, at *7. The exhaustion requirement is not jurisdictional, *Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011), and it has often been said that it "should not be construed to place a heavy technical burden" on the Title VII plaintiff, *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995), *cert. denied*, 519 U.S. 811 (1996). In the instant case, AARP's initial moving papers raised a single argument on this theme—namely, that Fennell had failed to allege that he had exhausted his administrative remedies. Def.'s Mem. at 4. However, it is well-established that the exhaustion of administrative remedies is not a pleading requirement but an affirmative defense. *Hodge v. United Airlines*, 666 F. Supp. 2d 14, 20 n.4 (D.D.C. 2009) (citing *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)). In recognition of this allocation of the burden of proof, "[m]eager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies," such as those proffered by AARP, are plainly insufficient. *Drewrey v. Clinton*, __ F. Supp. 2d __, 2011 WL 229432, at *4 (D.D.C. Jan. 26, 2011). Therefore, dismissal cannot rest on this basis.

Regardless, while Fennell may not have exhausted his administrative remedies at the time he commenced this action, AARP concedes, as it must, that Fennell has since filed a charge of

discrimination and received a right-to-sue letter from the EEOC.  Pl.'s Opp'n at 12-13.  "[T]he

defect of a prematurely filed lawsuit may be excused when it is cured by the issuance of a right to

sue letter while the action is pending."  *Cruz-Packer v. District of Columbia*, 539 F. Supp. 2d

181, 190 (D.D.C. 2008) (citing *Williams v. Washington Metro. Area Transit Auth.*, 721 F.2d

1412, 1418 n.12 (D.C. Cir. 1983)).  Absent some argument that the claims asserted in this action

are not reasonably related to those identified in Fennell's charge of discrimination—an argument

AARP has not made—these developments effectively moot AARP's exhaustion argument.[4]

## 2. Fennell Has Pleaded a Plausible Claim of Race- and Sex-Based Discrimination

As an alternative basis for dismissal, AARP argues that Fennell has failed to state a

plausible claim for race- or sex-based discrimination under Title VII.  Specifically, AARP avers

that (a) Fennell has failed to allege a *prima facie* case of discrimination and (b) the facts he has

alleged fail to state a plausible claim that he was discriminated against on the basis of his race or

sex.  Neither argument warrants dismissal.

### i. Fennell is not required to plead a *prima facie* case of discrimination.

AARP's contention that Fennell has failed to allege a *prima facie* case of discrimination,

---

[4] Citing the United States Court of Appeals for the District of Columbia's decision in *Martini v. Federal National Mortgage Association*, 178 F.3d 1336 (D.C. Cir. 1999), *cert. dismissed*, 528 U.S. 1147 (2000), which provides that the EEOC is precluded from issuing an early right-to-sue letter without first conducting an investigation of the charges raised by the complainant, AARP intimates that the timing of the issuance of the EEOC's right-to-sue letter in this case, coming a mere thirty days after Fennell first filed his charge, suggests that "no true investigation occurred."  Def.'s Reply at 3 n.4.  While AARP simply reserves the right to raise the issue in the future, and appears to back away from the contention in its subsequently filed papers, the Court observes that, in contrast to *Martini*, the EEOC in this case issued a final determination as to Fennell's charge of discrimination.  *See McAlister v. Potter*, 733 F. Supp. 2d 134, 144 (D.D.C. 2010) (distinguishing *Martini* on this ground); *Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 16-17 (D.D.C. 2003) (same).

Def.'s Mem. at 5, is without merit. The law of this Circuit is clear: at the motion to dismiss stage, dismissal is not available on the basis that the plaintiff has failed to plead the elements of a *prima facie* case of discrimination. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002)). In recognition of the fact that discovery is most likely to unearth relevant facts and evidence pertaining to discriminatory animus, the *prima facie* case is an evidentiary standard, not a pleading requirement. *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28 (D.D.C. 2010). Therefore, dismissal may not rest on this basis.

### ii. Fennell has adduced sufficient factual allegations to survive a motion to dismiss.

While a plaintiff need not plead all the elements of a *prima facie* case, he must nevertheless plead sufficient facts to show a plausible entitlement to relief. Under Title VII, the two essential elements for a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of his race, color, religion, sex, or national origin. *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). The pleading burden is not great, and courts in this Circuit have consistently recognized the "ease with which a plaintiff claiming employment discrimination can survive a . . . motion to dismiss." *Rouse v. Berry*, 680 F. Supp. 2d 233, 236 (D.D.C. 2010).

In the instant case, Fennell has satisfied his pleading burden, especially when taking into account the solicitude to be afforded the pleadings of *pro se* litigants. As an initial matter, the adverse employment action—termination—is "obvious." *Douglas v. Donovan*, 559 F.3d 549, 554 (D.C. Cir. 2009). Meanwhile, Fennell has alleged sufficient facts to state a plausible claim

that his termination was discriminatory.[5]  While the Court need not enumerate all those factual allegations here, the following are particularly noteworthy:

- First, Fennell has alleged that his job performance throughout his career was impeccable and that he was repeatedly praised in the area that was cited as the basis for his termination.  *See Iweala v. Operational Techs. Servs., Inc.*, 634 F. Supp. 2d 73, 83 (D.D.C. 2009) (superior performance ratings may be evidence that the employer's reasons for terminating the plaintiff were pretextual).

- Second, Fennell alleges that he was assured that his execution of the Restitution Agreement would satisfy AARP's concerns, and was initially told that he was being terminated as part of a reduction-in-force prompted by a deterioration in business conditions, only to be informed a mere eight days later that he was being terminated for an entirely different reason.  *See Jarmon v. Genachowski*, 720 F. Supp. 2d 30, 40 (D.D.C. 2010) (employer's "inconsistent explanations for its actions" may be evidence of pretext).

- Third, Fennell identifies three allegedly similarly situated white employees, and one similarly situated female employee, who engaged in comparable conduct but were not treated in a like manner.[6]  *See Brady*, 520 F.3d at 495 (evidence of pretext may be found where "employer treated other employees of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances.").

---

[5]  Although not immediately relevant to the present motion, the Court takes this opportunity to observe that Fennell appears to be laboring under the misapprehension that his allegations, if true, would constitute "direct evidence" of discrimination.  Pl.'s Opp'n at 4.  For Fennell's edification, "direct evidence" is that which, if believed by the fact finder, establishes a fact in question without any need for an inference, such as statements or documents showing a discriminatory animus on their face.  *Herbert v. Architect of Capitol*, __ F. Supp. 2d __, 2011 WL 637549, at *17 n.19 (D.D.C. Feb. 23, 2011).

[6]  The three employees are William Novelli, John Rothner, and Nancy J. Bremer.  Pl.'s Opp'n at 2-3.  While Fennell asserts that all three individuals were "similarly situated" to him, Pl.'s Opp'n at 3, other allegations cast at least some doubt on the assertion.  *See Adair v. Solis*, __ F. Supp. 2d __, 2010 WL 3833920, at *10 n.2 (D.D.C. Sept. 30, 2010) (plaintiff must show that the relevant aspects of comparators' employment situations are "nearly identical").  One of these employees, for instance, is identified as AARP's Chief Executive Officer, who was several levels removed from Fennell in the chain-of-command.  Compl. ¶ 5.  Nor were any of the three individuals likely to have held the same position as Fennell—namely, Manager, Print Services—a position that has obvious implications for the use of print services.  Of course, these considerations may ultimately be immaterial for purposes of the application of AARP's policies concerning personal use of company resources; the Court merely highlights the issue here as one that may require further elaboration in the course of this action.  For present purposes, it suffices to say that the question cannot be resolved in the current procedural posture.

13

- Fourth, Fennell alleges that, even though he was told that his position was being eliminated, it was in fact filled less than two months later by a female. *See Prater v. FedEx Corporate Servs., Inc.*, No. 07 Civ. 22, 2009 WL 1725978, at *11 (D.D.C. June 18, 2009) (employer's act of replacing the plaintiff with a person outside the plaintiff's protected class may be one factor in evaluating pretext).

- Fifth, Fennell has alleged that he was expressly authorized to engage in the conduct for which he was terminated, that such conduct was "standard practice," and that his superiors were all aware of the policy. *See Farris v. Clinton*, 602 F. Supp. 2d 74, 88 (D.D.C. 2009) (employer's deviation from "standard practice" could "give rise to a determination that the defendant's asserted nondiscriminatory justification for the [challenged] decision was pretextual.").

- Sixth, Fennell has alleged that the factual basis for AARP's allegations concerning his conduct are false and, in particular, that there was no support for AARP's assertion that he owed $15,000. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").

Of course, these allegations may or may not bear out in discovery and they may or may not be sufficient to survive a motion for summary judgment. They are nonetheless sufficient to discharge Fennell's burden to plead a plausible claim for race- and sex-based discrimination. Therefore, dismissal may not rest on this basis.

### iii.    AARP's extra-pleading materials do not counsel in favor of dismissal.

Perhaps recognizing the inevitability of this conclusion, AARP includes with its reply papers a declaration by a human resources representative professing to show that the universe of individuals identified by Fennell as having received more favorable treatment is overwhelmingly comprised of people within his protected class. *See* Decl. of Tracey Volk, Docket No. [11-1]. There are myriad problems with the argument. First, because it was raised for the first time in AARP's reply papers, the Court shall disregard the argument. *See Baloch v. Norton*, 517 F. Supp. 2d 345, 348 (D.D.C. 2007) ("If the movant raises arguments for the first time in his reply

to the non-movant's opposition, the court [may] either ignore those arguments . . . or provide the non-movant an opportunity to respond."), *aff'd*, 550 F.3d 1191 (D.C. Cir. 2008). Indeed, the eminently sensible concern that an opposing party may be deprived of a meaningful opportunity to respond to an argument raised for the first time on reply is heightened where, as here, the opposing party is appearing in the action without legal representation. Second, the argument is plainly premised upon consideration of materials outside the pleadings and, while there may be certain materials that a court may consider without converting the motion to one for summary judgment (*e.g.*, documents incorporated by reference into the complaint and public records of which the court may take judicial notice), the declaration proffered by AARP does not fall within the ambit of that narrow category. *See generally Felder*, 595 F. Supp. 2d at 58-59 (outlining the types of materials that may properly be considered on a motion to dismiss). Third, and perhaps most importantly, given that Fennell has pointed to various other factual allegations other than putative comparators that may independently support an inference of discriminatory animus, AARP's argument is unconvincing on the merits.

Similarly problematic is AARP's request, filed several weeks after the present motion had been fully briefed, for leave to supplement the record (the "Motion to Supplement"). *See* Def.'s Mot. for Leave to File Suppl. Reply Br. in Supp. of Mot. to Dismiss, Docket No. [12]. Premised upon purportedly "new and additional information" discovered in the time since AARP filed its reply memorandum, AARP asks this Court to consider "admissions" allegedly made by Fennell during the EEOC's investigation into his administrative charge. *Id.* at 1-2. In particular, AARP relies upon statements attributed to Fennell in a memorandum prepared as part of the walk-in interview conducted when Fennell filed his charge of discrimination. *See* Decl. of Kathleen

Williams, Docket No. [13-1], Ex. A. According to AARP, the statements further support the conclusion that the universe of individuals identified by Fennell as having received more favorable treatment is comprised of people within his protected class. *See* Proposed Suppl. Reply Br. of Def. AARP in Supp. of Mot. to Dismiss, Docket No. [13], at 2. For the same reasons just identified, the Court declines AARP's invitation to consider the proffered evidence: once again, these are materials outside the scope of the pleadings and were introduced only after the present motion had been fully briefed; therefore, without further briefing, Fennell would not be afforded a meaningful opportunity to respond. More to the point, while AARP's arguments may undercut the strength of the inference of discrimination in this case, they certainly do not allow this Court to conclude, as a matter of law, that Fennell has failed to state a plausible claim for relief. Accordingly, the Court shall DENY AARP's [12] Motion to Supplement.

No doubt aware of the limitations imposed upon the consideration of materials outside the scope of the pleadings, AARP suggests, in a footnote, that the Court may exercise its discretion to treat the motion as one for summary judgment. Def.'s Reply at 2 n.2. For various reasons, the Court also declines AARP's invitation in this regard. First, in framing its initial moving papers, AARP relied exclusively on Rule 12(b)(6) as a basis for dismissal. *See generally* Def.'s Mem. Consistent with this framing, the Court advised Fennell, in accordance with the United States Court of Appeals for the District of Columbia's decision in *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988), that he was required to respond lest the motion be treated as conceded. *See* Order (Dec. 11, 2009), Docket No. [7]. Because AARP did not move in the alternative for summary judgment or otherwise rely on matters outside the pleadings, the Court did not issue a further warning in accordance with *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir.

1992), which requires district courts to inform *pro se* litigants that, on a motion for summary judgment, "any factual assertion[s] in the movant's affidavits will be accepted by the district judge as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Id.* at 456. Second, and in a similar vein, before considering materials outside the pleadings, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Because AARP introduced the evidence at issue only with its reply papers, Fennell has not been afforded a meaningful opportunity to respond. Third, even if the Court were inclined to treat the motion as one for summary judgment, AARP has failed to comply Local Rule LCvR 7(h), which requires each party submitting a motion for summary judgment to attach a statement of material facts as to which the party contends there is no genuine dispute, with specific citations to those portions of the record upon which the party relies in fashioning the statement. Fourth, and finally, given that Fennell has pointed to various other factual allegations independent of the putative comparator evidence that may separately support an inference of discriminatory animus, AARP's argument is unconvincing on the merits, at least at the nascent stage of this litigation. For all these reasons, the Court declines to convert the present motion into one for summary judgment. Simply put, Fennell has stated a claim for relief and the Court therefore shall DENY AARP's [5] Motion to Dismiss.

### B.    *Fennell Has Stated a Claim for Age Discrimination*

Fennell's age discrimination claim is given exceedingly short shrift by AARP in its Motion to Dismiss. AARP concedes that Fennell's opposition papers include a reference to age discrimination, but nevertheless contends, in a footnote, that "given that [Fennell] states the

Complaint is brought under Title VII only, there is no basis for an age discrimination claim." Def.'s Reply at 1 n.1. Not only does the argument ignore the solicitude to be accorded to the filings of *pro se* litigants, it fails to acknowledge that Fennell's charge of discrimination, which is attached to his opposition papers and incorporated by reference therein, expressly identifies the Age Discrimination in Employment Act of 1967 (the "ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, as a basis for the present action. Pl.'s Opp'n at 12. Additionally, Fennell avers that he is fifty-three years old, within the class protected by the ADEA, and asserts that although AARP "claims to be an organization that defends the rights of individuals 50 and over and improve[s] the quality of their lives" and that he "is one of the people that [AARP] claims to represent and protect," he was "not protected" and was instead "discriminated against." Pl.'s Opp'n at 9. While certainly not as fulsomely developed as his claims for race- and sex-based discrimination, when situated alongside Fennell's allegations of circumstantial evidence of discrimination and when considered through the liberal lens afforded *pro se* filings, the Court concludes that Fennell has alleged a claim for age discrimination. *See Baloch*, 550 F.3d at 1196 (the essential elements for an ADEA claim are that the plaintiff suffered an adverse employment action because of his age). This is especially true given AARP's complete failure to come forward with a cogent and compelling argument for dismissal of the claim.

### C. *Additional Claims Cannot Be Resolved on the Present Motion to Dismiss*

Affording Fennell's *pro se* papers a liberal construction, various other causes of action, even though not expressly stated, are easily gleaned from the factual allegations set forth in the Complaint. These claims are left altogether unaddressed by AARP. Therefore, while the Court shall endeavor to describe the basic contours of such claims, with one exception, it does not

opine on their ultimate merits.[7]

### 1.      __Breach of Contract__

To state a claim for breach of contract, a plaintiff must allege (i) a valid contract between the parties, (ii) an obligation or duty arising out of the contract, (iii) a breach of that duty, and (iv) damages caused by that breach. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). In this case, Fennell alleges that he was promised severance in one of three specified forms in connection with the termination of his employment, that AARP breached that promise, and that he suffered damages as a result. Furthermore, as part of his requested relief, Fennell seeks specific enforcement of the Severance Agreement. These allegations align with a claim for breach of contract. However, because the claim is not addressed in the parties' briefing, the Court declines to opine on its merits at this time.

### 2.      __Fraudulent Misrepresentation__

To state a claim for fraudulent misrepresentation, a plaintiff must establish, by clear and convincing evidence, (i) a false representation, (ii) made in reference to a material fact, (iii) with knowledge of its falsity, (iv) with the intent to deceive, and (v) an action taken in reliance upon the representation. *In re Estate of McKenney*, 953 A.2d 336, 342 (D.C. 2008). "In alleging fraud . . . a party must state *with particularity* the circumstances constituting fraud," though "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added). In this case, Fennell alleges that he entered into the Restitution Agreement in reliance upon AARP's representation that his doing so would resolve all the concerns about his workplace behavior, and he claims that the representation was false and

---

[7] To the extent other claims may be gleaned from the four corners of Fennell's pleadings, AARP would be well-advised to address those claims in the context of any future dispositive motions.

known to be false at the time it was made. These allegations align with the elements of a claim for fraudulent misrepresentation. However, because the claim is not addressed in the parties' briefing, the Court declines to opine on its merits at this time.

### 3. Rescission

To justify rescission of a contract based on a misrepresentation, a plaintiff must establish, by a preponderance of the evidence, (i) a misrepresentation, (ii) made in reference to a material fact, that (iii) "would have been likely to have induced a reasonable recipient to make the contract." *McKenney*, 953 A.2d at 342 (internal quotation marks omitted). In contrast to a cause of action based on fraudulent misrepresentation, a claim for rescission may succeed even where the misrepresentations are made without fraudulent intent. *Id.* However, unlike a claim for fraudulent intent, a plaintiff prevailing on a claim for rescission cannot recover monetary damages, but merely may avoid the contract. *Id.* at 341-42. In this case, Fennell alleges that he entered into the Restitution Agreement in reliance upon AARP's representation that his doing so would resolve all the concerns about his workplace behavior, and he claims that the representation was false at the time it was made. Furthermore, as part of his requested relief, Fennell specifically seeks to have the Restitution Agreement set aside. These allegations align with the elements of a cause of action for rescission. However, because the claim is not addressed in the parties' briefing, the Court declines to opine on its merits at this time.

### 4. Wrongful Termination

A number of Fennell's allegations would suggest that he intends to assert a claim for wrongful termination. Fennell claims to "refute[] [AARP's] reasons for his termination because the reason has no basis in fact." Pl.'s Opp'n at 2. He further contends that AARP's decision to

terminate his employment was "arbitrary," and that when he "ask[ed] for an explanation why his job was eliminated . . . no answers were provided." *Id.* at 2-3. It is well-established that an at-will employee may, generally speaking, be discharged at any time and for any reason, or for no reason at all, provided the reason is not otherwise prohibited by law. *Liberatore v. Melville Corp.*, 168 F.3d 1326, 1329 (D.C. Cir. 1999). Nor is an employer required to "explain its reasons for firing an at-will employee without cause." *Francis v. District of Columbia*, 731 F. Supp. 2d 56, 72 (D.D.C. 2010). Therefore, to the extent Fennell was nothing more than an employee terminable at will, a wrongful termination claim would be of dubious merit. However, while nothing from the face of Fennell's filings would suggest that he was anything other than an at-will employee—*i.e.*, an employee hired without an expressed term or duration for his employment—neither does anything clearly indicate otherwise. *See generally* Compl.; Pl.'s Opp'n. Because the claim is not addressed in the parties' briefing, the Court declines to opine on its merits at this time.

### 5. Deprivation of Due Process

Fennell also queries why there was "no right to due process" in connection with his termination. Pl.'s Opp'n at 3. The answer is simple: the Due Process Clause, whether it be the one found in the Fifth Amendment or the Fourteenth Amendment, protects individuals from deprivations of due process by state actors and does not extend to the conduct of private employers. *Chandler v. W.E. Welch & Assocs., Inc.*, 533 F. Supp. 2d 94, 103 (D.D.C. 2008). Therefore, to the extent Fennell intends to assert a claim that he was "denied the basic right to due process which is granted to every U.S. citizen by the Constitution," Pl.'s Opp'n at 9, it is clear that such a claim must fail.

## IV.  CONCLUSION

The Court has considered the remaining arguments tendered by the parties and has

concluded that they are without merit.  Therefore, and for the reasons set forth above, the Court

shall DENY AARP's [5] Motion to Dismiss.  An appropriate Order accompanies this

Memorandum Opinion.


Date:   March 16, 2011

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge